IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

OLD REPUBLIC NATIONAL
TITLE INSURANCE COMPANY                                             PLAINTIFF

V.                                    NO. 5:10-5007

ACCESS TITLE, LTD. And
NORTHWEST ESCROW SERVICES, INC.                                     DEFENDANTS

## MAGISTRATE JUDGES REPORT AND RECOMMENDATION

Now on this 14th day of January, 2010, comes on for consideration **Plaintiff's Motion for Temporary Restraining Order and for Preliminary Injunction, filed on January 12, 2010. (Doc. #3).** A hearing was held before the undersigned on January 14, 2010, wherein counsel for Plaintiff, Old Republic National Title Insurance Company, (hereinafter referred to as "ORNTIC") counsel for Defendant Access Title, LTD., (hereinafter referred to as "Access") and David McCabe, registered agent for service of process of Northwest Escrow Services, Inc., (hereinafter referred to as "NW Escrow") were present. Mr. McCabe advised the Court that he had notified NW Escrow's insurer on January 13, 2010, of the pendency of this matter, and was advised that an attorney would be representing NW Escrow within 24 to 48 hours. The Court therefore scheduled a Preliminary Injunction hearing, to be held at 1:00 p.m. on Tuesday, January 19, 2010, in order for Defendant NW Escrow, to be heard. The question therefore before the Court at this time is whether a Temporary Restraining Order should issue as to Defendant NW Escrow.

1. This action centers around breaches of an Agency Agreement and Indemnity Agreement entered into ORNTIC, Access and NW Escrow, respectively. By virtue of the Agency Agreement

entered into between ORNTIC and Access, Access was appointed as an agent of ORNTIC for the limited purpose of issuing title insurance commitments, binders, title reports, certificates, guarantees, title insurance policies, endorsements, and other agreements regarding the condition of title concerning real estate located in Benton County, Arkansas. In said agreement, Access agreed to, <u>inter alia:</u>

- Receive and process applications for title insurance and issue policies in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules and instructions of Insurer, as well as in conformity with state and local laws and practice;

- Keep safely in an account separate from agent's operating accounts all funds received by Agent in connection with transactions which the Insurer's policy is involved, disburse said funds only for the purposes for which the same where entrusted, and reconcile all such accounts not less frequently than monthly;

- Comply with all statutes and governmental rules and regulations relating to the licensing and operation of Agent's business.

The agreement also imposed certain reporting requirements on Access and required it to remit to ORNTIC all amounts due under the agreement. It further provided that all amounts due ORNTIC under the agreement be considered "the property of Insurer and shall be held in trust by Agent for the benefit of Insurer in a bank account separate and apart from Agent's personal and operating accounts until such time said amounts are paid over to the Insurer."

An Indemnity Agreement was entered into between ORNTIC, Access and NW Escrow, whereby NW Escrow agreed to indemnify and hold ORNTIC harmless "from all liability, loss or damages of any nature, including reasonable attorney's fees and court costs incurred in enforcing" the Indemnity Agreement, which ORNTIC might sustain from the issuance of Insured Closing

Letters issued for the benefit of Access which indemnify the named holder against any loss that may result from certain failures and fraudulent acts of Access.

2. Pursuant to the terms of the agreement, ORNTIC recently conducted an audit of Access, and discovered information which ORNTIC alleges revealed that:

* Access was and has been misusing the funds in its financial accounts by making improper and unauthorized disbursements therefrom, failing to make certain disbursements therefrom and transferring such funds to and from accounts held by NW Escrow;

* Unknown to ORNTIC, NW Escrow also established and maintained financial accounts, including escrow and trust accounts, under the control of NW Escrow for the purpose of handling closings relating to transactions to which title commitments and policies were issued by Access;

* Both Access and NW Escrow issued lien payoff checks and other checks in connection with real estate closings for which ORNTIC title insurance policies had been issued or for which ORNTIC is obligated to issue, in at least the aggregate amount of $217, 226.74 (Access) and $467,006.80 (NW Escrow), and there are insufficient funds available in each of these escrow accounts to cover these amounts.

3. Pursuant to the Agency Agreement, ORNTIC notified Access in writing that the Agency Agreement was terminated effective January 4, 2010.

4. On January 12, 2010, ORNTIC instituted this action, seeking a Temporary Restraining Order and Preliminary Injunction, asking the Court to direct Defendants to refrain from certain

activities. A Preliminary Injunction was issued, upon agreement of the parties, as to Defendant Access.

5. The Court, being well and sufficiently advised, **recommends that a Temporary Restraining Order be issued as to Defendant NW Escrow, pending the preliminary injunction hearing to be held on January 19, 2010.**

6. The factors to be considered in deciding whether to grant a temporary restraining order or preliminary injunctive relief under Rule 65 of the Federal Rules of Civil Procedure include:

- the probability of success on the merits;
- the threat of irreparable harm to the movant absent the injunction;
- the balance between the harm and the injury that the injunction's issuance would inflict on other interested parties; and
- the public interest.

See Dataphase Sys., Inc. V. CL Sys., Inc., 640 F.2d 109, 113-114 (8th Cir. 1981) (en banc)). "The party seeking injunctive relief bears the burden of proving these factors." CDI Energy Services, Inc.v. West River Pumps, Inc., 567 F.3d 398, 402 (8th Cir. 2009), quoting from Lankford v. Sherman, 451 F.3d 496, 503 (8th Cir. 2006).

7. The Court finds the first factor, the probability of success on the merits, to be the most important consideration. See Kai v. Ross, 336 F.3d 650, 653 (8th Cir. 2003). The Agency Agreement involved in the present case has clear language requiring Access to properly maintain escrow accounts and remit policy premiums to ORNTIC. The language in the Indemnity Agreement clearly requires NW Escrow to hold harmless ORNTIC for any losses incurred because of Access' conduct. Based on what is before the undersigned at this stage of the litigation, it appears that

ORNTIC is likely to succeed on the merits at least with respect to the defendants' obligations under the written agreements.

8. With respect to the irreparable harm factor, Defendants' escrow accounts currently are underfunded. Although the exact shortfall identified by ORNTIC cannot be definitively determined at this time, it is clear that the funds currently held in escrow by Defendants are insufficient to cover checks already written by Defendants for loan payoffs. Further, at the hearing, ORNTIC's counsel stated that three claims resulting from the insufficiency of funds in the escrow accounts had already been presented and paid by ORNTIC in an amount in excess of $450,000.00. Continued dissipation of funds in these escrow accounts will continue, and ORNTIC will thereby be harmed further if Defendants do not refrain from continued disbursement of the funds. Furthermore, the Court was advised that defendants Access and NW Escrow are in the process of winding down their business operations, and it is therefore probable that if a temporary restraining order is not issued, ORNTIC would suffer an unrecoverable economic loss and would not otherwise have an adequate remedy at law.

9. With respect to the balance of harm factor, it is clear that without injunctive relief, not only the Plaintiff, but also those individuals or entities to whom the funds were to be distributed pursuant to closing instructions, will suffer great harm. Any harm suffered by NW Escrow is clearly outweighed by the harm that will be suffered by ORNTIC.

10. Based upon the foregoing, the undersigned hereby recommends that Defendant NW Escrow, its agents and other persons acting in concert or participation with it who receives actual notice of this Temporary Restraining Order, be enjoined as follows:

a. Defendant, NW Escrow, is immediately restrained from removing, destroying or concealing any and all assets, fixtures, furnishings, books, records, files, computers, computer records, forms, title policies, escrow files, closing files, title files and similar or related documents, including without limitation, all documents relating to records, documents, and/or files pertaining to real estate transactions and/or pertaining to title transactions involving the issuance of commitments, policies or guarantees by ORNTIC, along with any and all financial records, statements, accounts, checks, check registers, correspondence, and all other similar or related documents pending further order of this court.

b. Defendant, NW Escrow, is immediately restrained from making further disbursements, of any kind or nature, from any and all financial accounts, including its escrow accounts, in its control. ORNTIC shall give notice to any banks at which these accounts are maintained and of which ORNTIC is aware that no such withdrawals shall be permitted from these accounts.

c. Defendant, NW Escrow, is immediately restrained from selling, transferring, assigning, mortgaging, or disposing of in any way any real or personal property, tangible or intangible, held or owned by it until further orders of the Court.

d. Defendant, NW Escrow, is to immediately submit to an accounting, to be conducted by ORNTIC, of the above-referenced financial accounts and the general books of accounts and of all accounts, checks, records or files of NW Escrow pertaining to each and every transaction in which an ORNTIC Commitment for Title Insurance. ORNTIC Lenders Policy of Title Insurance, an ORNTIC Owner's Policy of Title Insurance and/or an ORNTIC Closing Protection Letter was issued.

e. In furtherance of the accounting ordered above, Defendant, NW Escrow, is to immediately provide ORNTIC unfettered access to all of its financial accounts and the general books of accounts and of all accounts, checks, records or files of NW Escrow pertaining to each and every transaction in which an ORNTIC Commitment for Title Insurance, ORNTIC Lenders Policy of Title Insurance, and ORNTIC Owner's Policy of Title Insurance and/or an ORNTIC Closing Protection Letter was issued.

11. Counsel for Plaintiff agreed at the hearing that he would deliver a copy of this Report and Recommendation to the appropriate banks.

IT IS HEREBY FURTHER RECOMMENDED that ORNTIC shall submit an injunction bond in the amount of $5,000.00 before the Temporary Restraining Order is effective. A hearing for the motion for preliminary injunction will be set for Tuesday, January 19, 2010, at 1:00 pm.

The United States Marshal's Service is directed to serve this Report and Recommendation – as well as the Report and Recommendation concerning the granting of a preliminary injunction against Access – on NW Escrow as soon possible.

**Given the exigent circumstances presented, Defendant NW Escrow, has until 5:00 P.M., January 15, 2010, to file objections to this Report and Recommendation.**

DATED this 14th day of January, 2010.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE